UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES DEANGELO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:12-CV-520 (GWC) |
| ) | |
| YELLOWBOOK INC., ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER RE:
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
(Doc. 56)

Plaintiff James DeAngelo brought this discrimination action against his former employer, defendant Yellowbook Inc., alleging disability discrimination in violation of state and federal law, as well as interference with and retaliation for the exercise of rights under the Family and Medical Leave Act ("FMLA"). (Doc. 27.) DeAngelo moves to compel production of the personnel file of Joe Cianciullo, his immediate supervisor at the time of his termination of employment from Yellowbook. (Doc. 56.) For the reasons stated below, DeAngelo's motion to compel is GRANTED.

I.  Background

James DeAngelo worked as a sales representative at Yellowbook Inc.[1] from October 2006 until February 22, 2011, when he was terminated. (Doc. 27 at 2, 6.[2]) DeAngelo sold both print and online advertising to new and existing customers. Throughout his tenure at Yellowbook, DeAngelo had multiple successful sales quarters, and received various company awards.

---

[1] On January 18, 2013, Yellowbook's corporate name was changed to hibu Inc. (Doc. 62 at 1 n.1.)

[2] The background facts and allegations, unless otherwise cited, are drawn from DeAngelo's second amended complaint. (Doc. 27 at 1-11.)

1

DeAngelo began experiencing health problems in August 2010, and in October of that year he was diagnosed with lymphoma. DeAngelo communicated his health condition and treatment plan to his supervisor, Joe Cianciullo, and Cianciullo's supervisor, Odded Benjamin. At the time relevant to the complaint, Cianciullo held the title of Area Sales Manager and Benjamin held the title of District Sales Manager. As a result of his condition, DeAngelo had difficulty making sales to new businesses during the fourth quarter of 2010. In December 2010, Cianciullo and Benjamin lowered DeAngelo's quarterly quota from twelve to eight new business sales.

DeAngelo failed to meet his modified quota of eight new sales by the end of the fourth quarter of 2010, which he alleges was due to his health condition and severely inclement weather in late December of 2010. In January 2011 Cianciullo placed him on a "performance improvement plan" which allowed him to sell only to new businesses and not to any of his existing clients. The plan also required DeAngelo to make seven new sales by mid-February. By this time DeAngelo's health condition had improved but he was still receiving chemotherapy treatments.

DeAngelo alleges that his health condition as well as more snow storms hindered his ability to make new sales in January. DeAngelo states that the pressure to make sales combined with his ongoing health condition caused him to contact Bri Carson, a Yellowbook human resources representative, with whom he discussed options for taking FMLA leave. DeAngelo claims that on February 18, 2011 he informed Carson he wanted to take a leave under FMLA, and on February 22 he faxed her a letter from his doctor.

Also on February 22, Cianciullo, in the presence of Benjamin, confronted DeAngelo about certain copy sheets—"form[s] that the sales representatives use to confirm orders placed by customers" (*id.* at 5)—that he had submitted. DeAngelo admitted that he himself—rather than the customer—provided a signature on the customer signature line of the copy sheets at issue. DeAngelo alleges that Benjamin and Cianciullo fired him two hours later for the stated reason of fraudulently signing the copy sheets. DeAngelo claims this reason is pretextual because "[i]t was common practice at [Yellowbook] for sales representatives to sign their names to copy sheets." (*Id.* at 6.) DeAngelo claims that the true reason for his termination was his seeking FMLA leave.

2

DeAngelo requested that Yellowbook produce, *inter alia*, "Cianciullo's personnel file and, if such files are kept separately, his disciplinary file." (Doc. 58-6 at 6.) Upon Yellowbook's objection to the request and refusal to produce Cianciullo's personnel file, DeAngelo brought this motion to compel production of the file pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.

## II.     Discovery Standard

The Federal Rules envision a broad scope of discovery, "encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (modifications omitted)). Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Moreover, "[i]n the context of employment discrimination cases, courts favor 'liberal civil discovery rules,' giving plaintiffs 'broad access to employers' records in an effort to document their claims.'" *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y. 2013) (quoting *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 657 (1989)). Rule 26 allows discovery to be limited if, for example, "the discovery sought is unreasonably cumulative or duplicative," or "the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C).

## III.    Analysis and Conclusions
### A.     The Parties' Arguments

DeAngelo argues that Cianciullo's personnel file is relevant to this action for two reasons. First, he contends that Cianciullo's file contains multiple complaints and at least one disciplinary action against Cianciullo for behavior that is more serious than that for which DeAngelo was purportedly terminated. (Doc. 58 at 3-4.) If true, the disproportionate severity of DeAngelo's discipline relative to Cianciullo's tends to make more likely DeAngelo's claim that the reason for his termination was pretextual. Second, DeAngelo claims that Cianciullo lied under oath while giving deposition testimony regarding the complaints other employees filed

3

against him with Human Resources ("HR"). Cianciullo has also denied signing any copy sheets himself, although two witnesses—both Yellowbook employees at times relevant to the complaint—stated in their depositions that he did so. DeAngelo believes Cianciullo's personnel file contains evidence that "might confirm or deny that Mr. Cianciullo lied under oath." (*Id.* at 6.) DeAngelo argues that such impeachment evidence is especially useful given "Cianciullo will be Yellowbook's primary witness in its defense."[3] (*Id.* at 4.)

Yellowbook objects that DeAngelo's request to produce Cianciullo's personnel file "seeks confidential and private information of one of its employees that is protected by . . . the Connecticut Personnel Files Act . . . ." (*Id.*) Yellowbook also argues that Cianciullo's personnel file is not relevant to the action, because neither his position within the company nor the complaints and discipline recorded in his personnel file are appropriate measures of comparison for purposes of DeAngelo's discrimination claims. (Doc. 59 at 2-4.) Yellowbook also contends that Cianciullo's personnel file is unlikely to lead to the discovery of any admissible evidence.[4] (*Id.* at 4-7.)

### B. The Connecticut Personnel Files Act

Yellowbook objects to DeAngelo's request for production of Cianciullo's personnel file on the grounds that the privacy of such material is protected under the Connecticut Personnel Files Act. The statute provides:

> No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except . . . pursuant to a lawfully issued administrative summons or judicial order . . . .

---

[3] Benjamin, who Yellowbook claims made the decision to terminate DeAngelo, is now deceased. DeAngelo argues that "there is ample evidence that Mr. Cianciullo, Mr. DeAngelo's direct supervisor, was an integral part of the termination decision." (Doc. 58 at 4 n.3.)

[4] In its response to DeAngelo's requests for production, Yellowbook also objected to DeAngelo's request to produce Cianciullo's personnel file "on the grounds that it is overbroad[ ] [and] unduly burdensome . . . ." (Doc. 58-6 at 6.) However, Yellowbook does not argue that the discovery request is overbroad or unduly burdensome in its opposition memorandum. The court therefore does not consider these arguments.

4

Conn. Gen. Stat. Ann. § 31-128f. This statute reflects the legitimate privacy interest Cianciullo holds in the content of his personnel file. The court will accordingly compel discovery only if DeAngelo can show that the file likely contains information relevant to this action. *See Shah v. James P. Purcell Assocs., Inc.*, No. Civ.3:05CV306(PCD), 2006 WL 988245, at *2 (D. Conn. Apr. 12, 2006) (limiting discovery of personnel files sought to those "of similarly situated employees for whom Plaintiff [could] show the files likely contain[ed] relevant information").

### C. The Likely Relevance of Cianciullo's Personnel File

"A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case" of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010). To establish his disparate treatment claim, DeAngelo will need to show that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (internal quotation omitted).

> What constitutes 'all material respects' . . . varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness.

*Id.* at 40. This standard "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.*

DeAngelo has sufficiently shown that Cianciullo may be an appropriate comparator for purposes of this discovery request. Yellowbook argues that DeAngelo and Cianciullo were "not similarly situated because Mr. Cianciullo was a supervisor and [DeAngelo] was an account executive." (Doc. 59 at 3.) However, comparators need not have the same job title, *see Dzanis v. JPMorgan Chase & Co.*, No. 10 Civ. 3384(BSJ)(JLC), 2011 WL 5979650, at *3 (S.D.N.Y. Nov. 30, 2011), nor need they occupy the same level of authority as the plaintiff within the organization. *See Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 839-40 (2d Cir. 1996). "Typically, a key determinant as to the employees who are proper comparators with an employment discrimination plaintiff is whether they shared a common supervisor." *Barella*, 296

F.R.D. at 105-06. Although Cianciullo was DeAngelo's direct supervisor, they were both under the supervision of Benjamin, whom Yellowbook claims made the decision to terminate DeAngelo. They were both also subject to the same workplace standards regarding the signing of copy sheets.

DeAngelo has also shown that the conduct that he alleges Cianciullo to have committed is comparably serious enough to warrant production of Cianciullo's personnel file. DeAngelo first claims that Cianciullo signed customer copy sheets—the very same conduct for which DeAngelo was terminated. Although Cianciullo denies this allegation, DeAngelo points to two Yellowbook employee witnesses who stated otherwise at their depositions. To the extent Cianciullo's personnel file may shed any light on these allegations, it is relevant for discovery purposes and DeAngelo is entitled to it.

DeAngelo further alleges that Cianciullo committed up to seven instances of inappropriate behavior, including comments of a sexual nature. (Doc. 58 at 3.) He argues that the fact that Cianciullo "received only a slap-on-the-wrist" for this conduct "indicates a permissive corporate atmosphere that stands in stark contrast to Yellowbook's draconian response" to DeAngelo's conduct of signing copy sheets. (*Id.* at 3-4.) Yellowbook responds that DeAngelo's claims concerning these incidents "have no reasonably close relation to the conduct at issue in this case, i.e., fraudulently signing copy sheets." (Doc. 59 at 3.)

"The determination that two acts are of comparable seriousness requires—in addition to the examination of the acts—an examination of the context and surrounding circumstances in which those acts are evaluated." *Padilla v. Harris*, 285 F. Supp. 2d 263, 270 (D. Conn. 2003). Yellowbook correctly points out the differing nature of the acts under comparison. However, the "comparable seriousness" standard seeks to avoid "a scenario where evidence of favorable treatment to an employee who has committed a different but more serious . . . offense, could never be relevant to prove discrimination." *Graham*, 230 F.3d at 40. DeAngelo alleges that the conduct in which Cianciullo engaged was more serious than that for which DeAngelo was terminated. At his deposition Cianciullo testified regarding some of the incidents complained of and the discipline he received. (Doc. 58-3) (Plaintiff's Exhibit C). At the hearing on DeAngelo's motion for a prejudgment remedy, Cianciullo testified to additional incidents that formed the complaints filed against him with HR. (Doc. 53 at 180-87.) Keeping in mind that the

6

purpose of discovery "is, in part, to help identify the universe of proper comparators," *Barella*, 296 F.R.D. at 106, the court concludes that DeAngelo has sufficiently shown that Cianciullo's personnel file contains material of potential relevance to his claims.

Two proceedings were required to reveal the full extent of the complaints other employees made to HR about Cianciullo's behavior. Cianciullo's personnel file may shed even more light on the complaints, which material DeAngelo desires in order to impeach Cianciullo's character for truthfulness. Yellowbook argues that such material would not be admissible under Rule 608 of the Federal Rules of Evidence. (Doc. 59 at 7.) The Rule allows, however, for inquiry into specific instances of conduct on cross-examination in order to attack a witness's character for truthfulness. Fed. R. Evid. 608(b). Regardless whether the material within Cianciullo's personnel file will itself be admissible, it may provide DeAngelo a good-faith basis for inquiring into Cianciullo's conduct while testifying during his deposition and at the prejudgment remedy hearing. *See Hynes v. Coughlin*, 79 F.3d 285, 294 (2d Cir. 1996) (noting that Rule 608(b) requires a good-faith basis for questions asked on cross-examination of witness). Cianciullo's credibility is especially relevant to DeAngelo's claim that Cianciullo lied when he stated he had never signed a copy sheet on the customer signature line.

Therefore, Yellowbook is ordered to produce, within twenty days of this order, the discovery responsive to DeAngelo's request for production: "Cianciullo's personnel file and, if such files are kept separately, his disciplinary file." (Doc. 58-6 at 6.) To maintain Cianciullo's privacy, the production is subject to a protective order to be negotiated by the parties. *See Sperling v. Harman Int'l Indus., Inc.*, No. CV 10-2415(JTB)(ETB), 2011 WL 4344165, at *2 (E.D.N.Y. Sept. 14, 2011) ("[I]n most cases, a protective order can appropriately remedy privacy concerns arising from discovery of personnel records." (internal quotation omitted)).

## CONCLUSION

For the reasons stated above, DeAngelo's motion to compel discovery (doc. 56) is GRANTED.

Dated this 11th day of February, 2015.

/s/
Geoffrey W. Crawford, Judge
United States District Court